UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

KEVIN BURLOW,

        Plaintiff,

v.

CITY OF DETROIT et al.,

        Defendants.
_____/

Case No. 23-cv-12120

HON. MARK A. GOLDSMITH

**OPINION AND ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 40)**

Plaintiff Kevin Burlow alleges that Defendants—Officers Ramiz Atto, Philip Tillison, and the City of Detroit—violated his Fourth Amendment right against unreasonable searches and seizures. See Compl. (Dkt. 1). Before the Court is Defendants' motion for summary judgment (Dkt. 40). For the reasons that follow, the Court grants Defendants' motion.[1]

### I.  BACKGROUND

The entirety of the interaction at issue in this case was recorded on body worn camera and lasts roughly three and a half minutes. Exs. A and B to Mot. Body Worn Camera (BWC) of Officers Atto and Tillison (Dkt. 40). Officers Atto and Tillison were dispatched to a Citgo Gas Station in Detroit on February 13, 2022, to investigate a disturbance involving an individual who refused to leave. Officer Atto BWC at 0:16. Upon entering the store, the store clerk told the

---

[1] Because oral argument will not aid the Court's decisional process, the motions will be decided based on the parties' briefing. See E.D. Mich. LR 7.1(f)(2); Fed. R. Civ. P. 78(b). In addition to the pending motions, briefing includes: (i) Burlow's Response (Dkt. 41), (ii) Defendants' Reply (Dkt. 42), and (iii) Burlow's Sur-Reply (Dkt. 46).

1

officers that the individual who was causing the disturbance had left so the officers were no longer needed.  Officer Atto BWC at 0:42–0:59.  While the officers spoke with the store clerk, Officer Atto noticed that another patron, Plaintiff Burlow, who was checking out with the store clerk, had the imprint of a firearm in his pants pocket.  Mot. at PageID.280, aff. of Officer Atto.  Officer Atto told Officer Tillison what he saw and they decided to investigate to see if Burlow had a concealed-pistol license (CPL).  Officer Atto BWC 0:58–1:08.

Officer Atto approached Burlow and asked him if he had a concealed pistol license while simultaneously pulling the firearm out of Burlow's pocket.  Id. at 1:10–1:20.  Burlow responded affirmatively and retrieved his CPL license from his wallet.  Id.  Officer Tillison left the store to verify Burlow's CPL license while Officer Atto held the firearm and stood next to Burlow.  Id. at 1:20–3:26.  Approximately two minutes later, Officer Tillison returned to the store and confirmed that Burlow had a valid CPL.  Id. at 3:26.  Officer Tillison handed Burlow back his CPL and Officer Atto gave Burlow back his firearm and the officers left the gas station.  Id. at 3:26–3:38.

## II.    ANALYSIS[2]

Invoking 42 U.S.C. § 1983, Burlow alleges that Officers Atto and Tillison violated his Fourth Amendment right when they conducted a Terry stop to verify that he had a CPL.  Compl. at ¶ 25; See Terry v. Ohio, 392 U.S. 1 (1968).  Burlow also alleges under 42 U.S.C. § 1983 that the City of Detroit failed to properly train its police officers on how to lawfully seize firearms under Michigan law.  Id. at ¶ 32.

---

[2] The Court applies the traditional summary judgment standard as articulated in Scott v. Harris, 550 U.S. 372, 380 (2007).  The movant is entitled to summary judgment if that party shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  If the movant makes an initial showing that there is an absence of evidence to support the nonmoving party's case, the nonmovant can only survive summary judgment by coming forward with evidence showing there is a genuine issue for trial. Celotex Corp. v. Catrett, 477 U.S. 317, 324–325 (1986).

2

In their motion, Defendants argue that they are entitled to summary judgment because (i) the officers did not conduct an illegal stop and seizure; (ii) even if the officers did conduct an illegal stop and seizure, they are entitled to qualified immunity; and (iii) the Monell claims, see Monell v. Dep't of Soc. Servs. of the City of N.Y., 436 U.S. 658 (1978), against the City of Detroit should be dismissed because Burlow makes no showing that the City of Detroit had an unconstitutional policy, practice, or custom or that the City failed to train its officers on the adequate procedures for seizing firearms.  Mot. at PageID.262–275.

Section 1983 claims "must satisfy two elements: 1) the deprivation of a right secured by the Constitution or laws of the United States and 2) the deprivation was caused by a person acting under color of state law." Ellison v. Garbarino, 48 F.3d 192, 194 (6th Cir. 1995) (punctuation modified).

The Fourth Amendment of the United States Constitution protects against "unreasonable searches and seizures." U.S. Const. amend. IV.  At the same time, the Fourth Amendment permits a police officer to temporarily detain an individual if the officer has reasonable articulable suspicion that crime may be afoot, even if the officer lacks probable cause.  United States v. Sokolow, 490 U.S. 1, 7 (1989) (citing Terry, 392 U.S. at 30).  During a Terry stop, officers may also conduct a precautionary search for weapons if there is "reasonable suspicion that the person searched may be armed and dangerous." United States v. Pacheo, 841 F.3d 384, 390 (6th Cir. 2016).  Whether an officer has reasonable suspicion is based on a totality of the circumstances and ultimately turns on whether a reasonably prudent person in the circumstances would believe that their safety or the safety of others was in danger.  Id.  The officer must be able to "point to particular facts from which [they] reasonably inferred that the individual was armed and dangerous." Sibron v. New York, 392 U.S. 40, 64 (1968).

3

Courts interpreting Michigan firearm laws have found that carrying a concealed weapon is presumptively illegal subject to a person producing a CPL. United States v. Patterson, No. 22-cr-20269, 2023 WL 4290051 at *3 (E.D. Mich. June 30, 2023) (collecting cases). Because of this presumption of illegality, the "incriminating nature" of the gun imprint would have been "immediately apparent" to Officer Atto. See United States v. Galaviz, 645 F.3d 347, 356 (6th Cir. 2011). As soon as Officer Atto saw the imprint of Burlow's firearm, he was entitled to conduct a Terry stop to investigate whether Burlow had a CPL. United States v. Morris, No. 24-cr-20339, 2025 WL 218819 at *5 (Jan. 16, 2025). When Burlow produced his CPL and officers verified it, the presumption of illegality ended, as did the Terry stop. Id. Therefore, the stop did not violate the Fourth Amendment.

Burlow argues that (i) the officers did not have reasonable articulable suspicion or probable cause to stop and search him because he had a valid CPL and he was "lawfully present at the gas station," Resp. at PageID.299; (ii) "Michigan is an open carry state, the mere presence of a firearm does not constitute reasonable suspicion of criminal activity," Sur-Reply at PageID.558; and (iii) that his detention was unlawful and exceeded the scope of the Terry stop. Resp. at PageID.300–301. These arguments are without merit.

Burlow provides no case law to support his argument that the officers lacked reasonable articulable suspicion to justify stopping and seizing his firearm. This is not surprising because the caselaw analyzing Michigan firearm laws says exactly to the contrary. See Patterson, 2023 WL 4290051 at *3 (finding that under Michigan law, carrying a concealed pistol is a prima facie violation of law). And Burlow's argument about Michigan being an open-carry state has no application here, given that Burlow was not openly carrying. He was concealing his firearm in his pocket.

4

Burlow's last argument—that his roughly two-minute-long detention was unlawful and exceed the scope of Terry—is entirely unsupported. Burlow provides no authority or rationale for why such a brief detention would be "unlawful" or "prolonged." The Court need not evaluate an argument that Burlow fails to develop. See ECIMOS, LLC v. Nortek Glob. HVAC, LLC, 736 F. App'x 577, 583–584 (6th Cir. 2019) ("[T]his court has consistently declined to review issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation.") (punctuation modified).

Summary judgment in favor of the individual Defendants is proper because there was no Fourth Amendment violation. Because there was no violation, summary judgment is also warranted under qualified immunity. Reed v. Campbell Cnty, Kentucky, 80 F.4th 734, 742 (6th Cir. 2023) ("To overcome a qualified-immunity defense, a plaintiff must show that the official (1) violated a…constitutional right…") (punctuation modified).

Summary judgment in favor of the City of Detroit on Burlow's Monell claim is also proper, because Burlow has not demonstrated an underlying constitutional violation. Luis Martinez et al. v. Wayne Cty, Mich. et al., No.24-1474, 2025 WL 1733451 at *9 (6th Cir. June 23, 2025) ("[T]here can be no liability under Monell without an underlying constitutional violation.").

### III.  CONCLUSION

For the reasons stated above, the Court grants Defendants' motion for summary judgment (Dkt. 40).

**SO ORDERED.**

Dated: July 15, 2025  　　　　　　　　　　　s/Mark A. Goldsmith
Detroit, Michigan  　　　　　　　　　　　　MARK A. GOLDSMITH
　　　　　　　　　　　　　　　　　　　　United States District Judge

5

## CERTIFICATE OF SERVICE

    The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First-Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 15, 2025.

                                              s/Joseph Heacox
                                              JOSEPH HEACOX
                                              Case Manager